**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

MIDFIRST BANK,

      Petitioner,

v.

SAFEGUARD PROPERTIES, LLC,

      Respondent.

Case No. ___CIV-17-231-D___

**PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF**
**PETITION TO COMPEL ARBITRATION AND DESIGNATE AN ARBITRATOR**

      Pursuant to Section 4 and 5 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 4-5, Petitioner MidFirst Bank ("MidFirst") has filed a Petition for a Court order (1) compelling Safeguard Properties, LLC ("Safeguard") to arbitrate claims arising under a Master Service Agreement (the "Agreement," attached as Exhibit 1 to the Petition) requiring Safeguard to indemnify MidFirst for losses caused by Safeguard's performance of property-related services under the Agreement and, (2) designating a sole arbitrator, as requested by MidFirst, in the event the parties are unable to agree upon an arbitrator within 14 days of a Court order compelling Safeguard to arbitrate MidFirst's claims.

      MidFirst and Safeguard agreed to arbitrate in the Western District of Oklahoma "any disputes . . . relating to" Safeguard's obligation to indemnify MidFirst for "all losses" "arising from or connected with" Safeguard's performance, as further set forth in the Agreement's indemnification provision. Agreement, § 11. MidFirst provided written notice of its intent to arbitrate claims relating to Safeguard's breach of this indemnification obligation, but Safeguard has refused to agree to arbitrate.

Section 4 of the FAA provides that a court "shall" order arbitration if a party to a contract "fail[s]" to comply with a valid arbitration provision.  9 U.S.C. § 4.  Precisely such a failure has occurred here.  Accordingly, this Court should issue an order compelling Safeguard to arbitrate the claims set forth in MidFirst's Demand Letter, which is attached as Exhibit 2 to the Petition.

Section 5 of the FAA provides that a court "shall designate and appoint an arbitrator" if "no method [is] provided" in the agreement for selecting an arbitrator.  9 U.S.C. § 5.  The Agreement here does not provide for a method of selecting an arbitrator.  If the Court orders Safeguard to arbitrate MidFirst's claims, MidFirst will attempt to confer with Safeguard to identify a mutually acceptable arbitrator in Oklahoma City.  If after 14 days of a Court order compelling Safeguard to arbitrate MidFirst's claims, the parties are unable to agree upon an arbitrator, MidFirst will ask the Court to designate and appoint an arbitrator proposed by MidFirst.

## BACKGROUND

### I.    The MidFirst-Safeguard Agreement

MidFirst is a federally chartered savings association based in Oklahoma City, Oklahoma, that provides retail banking and residential mortgage services.  At times, MidFirst must foreclose on residential properties for which it has issued mortgages.  In the mortgage industry, it is common for banks to contract with third-party vendors who provide on-the-ground services necessary to protect and repair foreclosed properties.  These are referred to in the industry as property preservation and inspection services.

2

Safeguard is one company that provides such services — it is a national property preservation and inspection company.

On December 4, 2007, MidFirst and Safeguard entered into the Agreement, under which Safeguard agreed to provide services relating to real properties undergoing various stages of foreclosure by MidFirst.[1]  Pursuant to the Agreement, Safeguard agreed to perform multiple services for MidFirst, including property inspection services, property preservation services, and property repair services.

Property inspection services are defined as "on-site, visual inspections" of properties, which "include such actions as are appropriate in order to determine the status of the property."  Agreement § 1(K).  The Agreement contemplated several different types of inspections.  *Id.*

Property preservation services include work "in connection with the securing, protection and preservation" of properties, including various types of "maintenance and repair work."  Agreement § 1(M), (N).

Property repair services are a subset of property preservation services, which relate to repairing properties.  The Agreement provided that Safeguard would "complete repairs as requested and approved by" MidFirst.  Agreement Ex. A, § 2.1.2(c).

---

[1] The original Agreement was executed by predecessors-in-interest of Safeguard and MidFirst — Safeguard Properties, Inc., an Ohio corporation, and Midland Mortgage Co., an Oklahoma corporation.  The First Amendment to the Agreement, dated July 14, 2009, replaced all references to Safeguard Properties, Inc. with "Safeguard Properties, LLC," as the former had "transferred and assigned all its assets and liabilities to" Safeguard Properties, LLC (Respondent here).  The Second Amendment to the Agreement, dated December 22, 2011, replaced all references to Midland Mortgage with "MidFirst Bank" (Petitioner here), which had by then "assumed all loan servicing activities of Midland Mortgage."  For convenience, in this memorandum we refer simply to "Safeguard" and "MidFirst" as the parties to the Agreement.

The Agreement required all of these services to be performed in accordance with the standards set forth in the Agreement: "[Safeguard] shall perform all Contract Services in a thorough and good workmanlike manner (and shall at all times, at a minimum, meet the accepted standards of the industry) in strict compliance with all applicable Rules." Agreement § 5.  The "Rules" are defined in the Agreement as follows:

> all published HUD, VA, Fannie Mae, Freddie Mac, GNMA, private investor and private mortgage insurer regulations, guidelines and requirements and all updates thereto.  Rules shall also include all applicable federal, state and local laws, rules, regulations and ordinances, and [MidFirst's] requirements, policies and procedures, and all amendments thereto.

Agreement § 1(P).

The requirement that, in performing its services, Safeguard comply with the "Rules," including regulations and guidance issued by the federal Department of Housing and Urban Development ("HUD"), is particularly relevant to the instant dispute.  In the Agreement, "[Safeguard] specifically covenants and warrants that it will comply with all Rules involving the performance of contract services in the geographic area where the property is located and . . . the costs incurred by [MidFirst] will qualify for reimbursement under Rules. . . .  Company represents and warrants that it shall at all times stay apprised of the rules."  Agreement § 5.  Safeguard thus warranted and agreed that all work it performed would be in full compliance with HUD regulations and guidance, and that Safeguard would stay apprised of any changes to those regulations and guidance.

4

Safeguard further agreed to indemnify MidFirst for "any and all loss" "of any kind" that "arise[s] from or is in any way connected with . . . any violation or failure to comply with the Rules":

> [Safeguard] shall indemnify and hold [MidFirst], its Affiliates, respective employees, officers, directors, and agents harmless from any and all loss, payments, expenses, claims, injury, liability, damages, penalties, fines, forfeitures, denials of insurance and/or guarantee claims, lost compensation or reimbursement amounts, attorneys fees and costs, of any kind whatsoever, arising from or in any way connected with (a) any violation or failure to comply with the Rules; (b) non-compliance with the terms of this Agreement or any Exhibit, Addendum or Amendment hereto, including but not limited to breach of any warranty or representation or performance standard set forth herein; (c) any claims or actions whatsoever brought by any Subcontractor or on behalf of a Subcontractor hired by or working on behalf of Company; (d) negligent, wrongful acts or misconduct by Company, its employees, officers, directors, agents, contractors or Subcontractors, (e) any claims or actions brought by a third party alleging damage or injury to the property or person arising out of an act or omission of [Safeguard], its affiliates, respective employees, officers, directors, contractors, Subcontractors, and agents or (f) any mistakes by [Safeguard], its affiliates, respective employees, officers, directors, contractors, Subcontractors, and agents relating to the Contract Services herein.

Agreement § 11. Safeguard's indemnification obligation is a material term that "shall survive the termination of this Agreement." *Id.*[2]

## II. Safeguard's Breach of Its Indemnification And Underlying Obligations Under the Agreement

Many of the properties for which Safeguard performed work for MidFirst were subject to mortgage loans insured by HUD. The insurance policies entitle MidFirst to insurance benefits if the mortgagor defaults, provided that the property is in "conveyance condition" as outlined in 24 C.F.R. § 203.378 and associated HUD guidance documents,

---

[2] On August 17, 2016, Safeguard gave notice that it was terminating the Agreement with MidFirst. The termination became effective on February 13, 2017.

and that the property is conveyed to HUD within the time frame set forth in 24 C.F.R. § 203.359.  The property generally cannot suffer any damage while in the possession of the mortgagee, or else it is not in conveyance condition.  24 C.F.R. § 203.378(c)(3).  If HUD determines that the requirements for a conveyance have not been met, it has the right to reconvey the property and to refuse payment of the insurance benefits to the mortgagee.  *See* 24 C.F.R. §§ 203.363, 203.364, 203.379.

Unfortunately, many of the properties assigned to Safeguard under the Agreement were not timely or properly placed in conveyance condition by it and were subsequently reconveyed by HUD, resulting in significant losses to MidFirst.  For example, HUD reconveyed numerous properties, citing damage, such as missing tiles, dirty or damaged floors, walls, or roofs, or other types of damage, that Safeguard failed to adequately address (*e.g.*, either by repairing the damage or by properly documenting that such damage existed before the property came into the possession of MidFirst), notwithstanding Safeguard's obligation to do so under the Agreement.  Upon such reconveyances, MidFirst was required to fix the properties, at its own expense, before conveying them to HUD a second time.

The categories of losses (collectively, "Damages") suffered by MidFirst include:

i.      Interest Curtailments.  For each property that Safeguard failed to place in conveyance condition by the applicable deadline, MidFirst received no interest from HUD after the deadline was missed.

ii.      Reconveyance Losses.  MidFirst incurred on reconveyed properties additional expenses that are not reimbursable by HUD, including escrow advances,

6

interest on those advances, and costs to conduct additional repairs necessary to place the property in conveyance condition.

iii.      Per-Day Costs Assessed By HUD.  HUD charges a per-day holding and property preservation costs for the period of time between the first conveyance and the reconveyance, which MidFirst must pay and which is not reimbursable.

iv.      Miscellaneous Other Expenses.  MidFirst incurred additional expenses and losses as a direct and proximate result of Safeguard's breach of the Agreement.

Over the course of the Agreement, MidFirst has submitted claims to Safeguard for indemnification of losses covered under the indemnification provision, and provided supporting detail for each claim.   However, since 2014, Safeguard has refused to indemnify nearly of all of MidFirst's claims, without justification and despite having paid the same types of losses previously.   Because Safeguard has materially breached the Agreement, MidFirst is entitled to offset its Damages by an equal amount of unpaid Safeguard invoices.  *See, e.g.*, *Murphy Oil USA, Inc. v. Wood*, 438 F.3d 1008, 1015-16 (10th Cir. 2006) (recognizing right of setoff arising from opposing party's prior material breach).

## III.    The Agreement's Arbitration Provision & MidFirst's Demand for Arbitration

The Agreement contains a broad arbitration clause in § 11 — the section containing Safeguard's indemnification obligations.  The arbitration provision states: "In the event any disputes arise relating to this Section, then the parties agree to submit the dispute to arbitration, in accordance with the laws of Oklahoma, unless both parties agree

in writing not to go to arbitration.  Such dispute will be brought in the jurisdiction of Oklahoma with a venue in the Western District of Oklahoma."

On February 23, 2017, MidFirst sent a letter (the "Demand Letter," attached as Exhibit 2 to MidFirst's Petition to Compel Arbitration) to Safeguard, pursuant to the notice provision of the Agreement, exercising the contractual right to submit the parties' disputes to arbitration in Oklahoma City, pursuant to § 11 of the Agreement.  By letter dated March 2, 2017 ("Safeguard's Refusal Letter") (attached as Exhibit 3 to the Petition), Safeguard refused to agree to arbitrate MidFirst's claims.  Specifically, Safeguard's letter refused to acknowledge that MidFirst's claims "are included within the arbitration provision," despite already having detailed information about each claim for which MidFirst has requested indemnification.  Safeguard also "reject[ed]" the arbitrability of MidFirst's related right of setoff.

## ARGUMENT

The FAA provides that arbitration agreements are "valid, irrevocable, and enforceable," 9 U.S.C. § 2, "reflect[ing] an emphatic federal policy in favor of arbitral dispute resolution," *Marmet Health Care Ctr., Inc. v. Brown*, 132 S. Ct. 1201, 1203 (2012) (*per curiam*) (internal quotation marks omitted).  Accordingly, the FAA "creates a 'presumption in favor of arbitrability and courts must resolve all doubts' in favor of arbitration." *Edwards v. Blockbuster Inc.*, 400 F. Supp. 2d 1305, 1310 (E.D. Okla. 2005) (quoting *Shankle v. B-G Maintenance Mgmt.*, 163 F.3d 1230, 1233 (10th Cir. 1999)).[3]

---

[3] The Federal Arbitration Act applies to "arbitration agreements contained in contracts involving [interstate] commerce." *Shankle*, 163 F.3d at 1232; *see also Edwards*, 400 F. Supp. at 1308 ("[C]ourts have recognized that the FAA applies to all arbitration

8

Under § 4 of the FAA, a court "shall" compel a party to proceed with an arbitration if the court is "satisfied that" both (1) "the making of the agreement for arbitration," and (2) "the failure to comply therewith," are "not in issue." 9 U.S.C. § 4. "If these two elements are satisfied, the Court has no discretion and must direct the parties to proceed to arbitration." *Drinnon v. Drinnon Const., LLC*, No. 14-819, 2014 WL 6620937, at *1 (W.D. Okla. Nov. 19, 2014); *see also, e.g.*, *KPMG LLP v. Cocchi*, 565 U.S. 18, 22 (2011) ("[T]he [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." (citation and quotation marks omitted)). "The party seeking to avoid arbitration bears the burden of proving that the claims are not covered, and only the most forceful evidence of a purpose to exclude a claim from arbitration can prevail." *Drinnon*, 2014 WL 6620937, at *1 (quoting *Edwards*, 400 F. Supp. 2d at 1310).

Both elements are satisfied here. *First*, § 11 of the Agreement by its plain language expressly provides for arbitration of the claims asserted by MidFirst. *Second*, Safeguard has refused to agree to arbitrate MidFirst's claims. Because both requirements of § 4 of the FAA are satisfied, this Court should issue an order requiring Safeguard to arbitrate the claims raised in MidFirst's Demand Letter.

---

agreements involving interstate commerce. . . ."). Because MidFirst and Safeguard are citizens of different states, and the services provided under the Agreement were provided for properties located in multiple states, the FAA applies here. *See, e.g.*, *Edwards*, 163 F.3d at 1308 n.1 (agreement between persons located in different states covering commercial transactions in multiple states "involves interstate commerce").

9

Moreover, the Court should retain jurisdiction of this matter for the purpose of designating and appointing an arbitrator, in the event that the parties are unable to agree upon an arbitrator within 14 days after entry by this Court of an order compelling Safeguard to arbitrate MidFirst's claims.

## I.    The Agreement Requires Arbitration of the Claims Asserted in MidFirst's Demand Letter.

As discussed above, the Agreement expressly requires Safeguard to arbitrate any disputes "relating to" the indemnification provisions of the Agreement.  Section 11, which addresses indemnification, provides that "[i]n the event any disputes arise relating to this Section, then the parties agree to submit the dispute to arbitration, in accordance with the laws of Oklahoma, unless both parties agree in writing not to go to arbitration. Such dispute will be brought in the jurisdiction of Oklahoma with a venue of the Western District of Oklahoma."

This language unambiguously requires the parties "to submit the dispute to arbitration." *See, e.g.*, *Tormey v. Morning Dove, LLC*, No. 12-1328, 2013 WL 1450513, at *4-5 (W.D. Okla. Apr. 9, 2013) (language that the "parties shall resolve the Dispute by arbitration" is "enforceable"); *ARW Exploration Corp. v. Aguirre*, No. 90-1598, 1992 WL 235875, at *2 (W.D. Okla. July 9, 1992) (language that "disputes shall be subject to binding arbitration" is enforceable).

MidFirst's claims fit squarely within the scope of the arbitration provision.  As the U.S. Supreme Court has explained: "the key phrase, obviously, is 'relating to.'  The ordinary meaning of these words is a broad one—'to stand in some relation; to have

bearing or concern; to pertain; refer; to bring into association with or connection with.'" *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (quoting Black's Law Dictionary 1158 (5th ed. 1979)).  Likewise, the Tenth Circuit has held in the context of arbitration agreements that "[t]he ordinary meaning of the phrase 'relating to' is broad." *Chelsea Family Pharmacy, PLLC v. Medco Health Solution*, 567 F.3d 1191, 1199 (10th Cir. 2009).

MidFirst's losses, as described above and set forth in the Demand Letter, all are "arising from or in any way connected with," *inter alia*, (1) a "violation or failure to comply with the Rules," and in particular HUD's rules for conveying foreclosed property to the federal government; (2) "non-compliance with the terms of this Agreement, . . . including but not limited to breach of any warranty or representation or performance standard set forth [in the Agreement]"; (3) "negligence, wrongful acts or misconduct"; or (4) any other "mistakes," for which Safeguard must indemnify MidFirst as set forth in Section 11 of the Agreement.  Such claims are plainly "relating to" § 11.

Further, Safeguard's refusal to indemnify MidFirst since 2014 for substantial losses constitutes a material breach of the Agreement, entitling MidFirst to offset its losses by amounts invoiced by Safeguard under the Agreement.  *See, e.g.*, *Murphy Oil USA, Inc. v. Wood*, 438 F.3d 1008, 1015-16 (10th Cir. 2006) (recognizing right of setoff arising from opposing party's prior material breach).  A dispute over MidFirst's right to setoff amounts owed to Safeguard against Safeguard's indemnification debt plainly "relate[s] to" the Indemnification Section of the Agreement.  Safeguard's failure to perform under its indemnification obligations is the very reason why MidFirst is entitled

11

to setoff amounts owed to Safeguard.  The "first breach" rule, which "is well settled in Oklahoma," *id.* at 1015, entitles a party to stop or suspend performance of a contractual obligation after the counterparty materially breaches the contract.  *Express Servs., Inc. v. Averette*, No. CIV-06-820-C, 2007 WL 1888652, at *2 (W.D. Okla. June 29, 2007); *see Murphy Oil USA, Inc.*, 438 F.3d at 1015-16.  Under Oklahoma law, a material breach occurs where either "the failure of performance defeats the object of the contract," *Webco Indus., Inc. v. Diamond*, No. 11-CV-774-JHP-FHM, 2012 WL 5995740, at *10 (N.D. Okla. Nov. 30, 2012), or the failure "concerns a matter of such importance that the contract would not have been made if default in that particular had been expected or contemplated," *Zenith Drilling Corp. v. Internorth, Inc.*, 869 F.2d 560, 563-64 (10th Cir. 1989).

For these reasons, courts have consistently held that the violation of an indemnification clause amounts to a material breach of contract.  For example, in *Reddy v. PrimeCare Int'l, Inc.,* the Delaware Chancery Court held that the defendant's contractual obligation to advance litigation expenses was excused by the plaintiff's prior material failure to make payments under the contract's indemnity clause.  *See* No. C.A.18305, 2000 WL 1654834, at *3-4 (Del. Ch. Oct. 20, 2000); *see also, e.g.*, *Waste Management Inc. v. Rice Danis Industries Corp.*, 257 F. Supp. 2d 1076, 1085 (S.D. Ohio 2003) (plaintiff's failure to perform under a covenant not to sue in a settlement agreement was excused by the defendant's prior material failure to make indemnity payments).  Similarly, Safeguard's failure to perform under its indemnification obligations is a material breach of the Agreement, because that provision contractually allocated to

12

Safeguard the risk of all losses incurred on foreclosed properties for any violation of or failure to comply with HUD's conveyance rules, regulations and guidelines.

Arbitration of MidFirst's claims is particularly appropriate given that "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *In re Cox Enters., Inc. Set-top Cable Television Box Antitrust Litig.*, 835 F.3d 1195, 1201 (10th Cir. 2016) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983)). Indeed, where, as here, there is an "absence of any express provision excluding a particular grievance from arbitration," "only *the most forceful* evidence of a purpose to exclude the claim from arbitration can prevail." *In re Cox Enters.*, 835 F.3d at 1201 (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 584-85 (1960)) (emphasis in original). Here, there is no evidence indicating a purpose to exclude the claims asserted by MidFirst from arbitration, much less "the most forceful evidence." Accordingly, MidFirst's claims raised are properly subject to arbitration.

## II.    Safeguard Has Failed to Comply with Its Arbitration Obligation.

Safeguard has refused to arbitrate the claims in MidFirst's Demand Letter. Although acknowledging that "claims for indemnification" are "subject to arbitration," Safeguard would not agree that MidFirst's "claims are included within the arbitration provision," and specifically "rejected" arbitration of MidFirst's related setoff claim. (Safeguard's Refusal Letter, Ex. 3 at 1). Safeguard's request for additional information is pretextual, as it has already received detailed information from MidFirst about its indemnification claims. In the ordinary course of business, MidFirst provided Safeguard

with an indemnification packet for each property loan for which MidFirst sought indemnification, which included a specific demand for payment, breakdown of the losses, and substantial supporting documentation.  An example of such a packet is attached as Exhibit 4 to the Petition (redacted to protect personally identifiable information about the borrower).

In addition, MidFirst previously provided to Safeguard a detailed spreadsheet identifying the aggregate dollar amount of each component of MidFirst's Damages, as calculated by MidFirst last summer, in connection with its efforts to reach an amicable resolution of this matter.   (Safeguard terminated the Agreement soon thereafter.) MidFirst and Safeguard representatives also discussed MidFirst's indemnification claims by telephone and through correspondence on multiple occasions since 2014.   In short, Safeguard has ample information from which to conclude that all of MidFirst's claims for indemnification and related right of setoff for Safeguard's breach of its indemnification obligation, fall squarely within the arbitration provision.

Finally, and to the extent that Safeguard questions the total amount of MidFirst's claims, that issue will be resolved through proof in the arbitration proceeding itself. Although Safeguard may contest the amount it owes as indemnification, this fact does not undercut the arbitrability *ab initio* of MidFirst's claims.

### III.    Court Appointment If Parties Are Unable to Agree On An Arbitrator.

Section 5 of the FAA provides that "if no method [is] provided" in the agreement for "naming or appointing an arbitrator," then "upon the application of either party to the controversy the court shall designate and appoint an arbitrator."  9 U.S.C. § 5.  Here, the

14

Agreement does not specify any method for appointing an arbitrator. Accordingly, should it become necessary, this Court has authority to appoint an arbitrator pursuant to § 5. *See generally Shell Oil Co. v. CO2 Comm., Inc.*, 589 F.3d 1105, 1109 (10th Cir. 2009) (noting that "a court may designate arbitrators . . . if the arbitration agreement does not provide a method for selecting arbitrators").

MidFirst thus requests that the Court also require the parties to notify the Court, within 14 days of an order compelling arbitration, whether an arbitrator has been selected. If by that date the parties have not agreed upon an arbitrator, MidFirst intends to ask the Court to appoint an arbitrator proposed by MidFirst who resides in the in the Western District of Oklahoma, pursuant to the terms of the Agreement and FAA § 5.

## <u>CONCLUSION</u>

For the foregoing reasons, MidFirst's Petition should be granted, and the Court should issue an order compelling Safeguard to arbitrate the claims set forth in MidFirst's Demand Letter in the Western District of Oklahoma, and enjoining Safeguard from pursuing any method of dispute resolution other than binding arbitration. MidFirst further requests that the Court retain jurisdiction of this matter for purposes of appointing an arbitrator pursuant to FAA § 5, in the event that the parties have not otherwise agreed upon an arbitrator within 14 days of the order compelling arbitration.

March 2, 2017                          Respectfully submitted,


                                       /s/ *Kiran A. Phansalkar*
                                       Kiran A. Phansalkar, OBA #11470
                                       Matthew L. Warren, OBA #31260
                                       Conner & Winters, LLP
                                       1700 One Leadership Square
                                       211 North Robinson
                                       Oklahoma City, OK  73102-7101
                                       Telephone:  (405) 272-5711
                                       Facsimile:  (405) 232-2695
                                       kphansalkar@cwlaw.com
                                       mwarren@cwlaw.com

                                       and

                                       Eric C. Bosset (*pro hac vice* forthcoming)
                                       Luke Meier (*pro hac vice* forthcoming)
                                       Covington & Burling LLP
                                       One CityCenter
                                       850 Tenth St., NW
                                       Washington, DC  20001
                                       Telephone:  (202) 662-5606
                                       Facsimile:  (202) 778-5606
                                       ebosset@cov.com
                                       lmeier@cov.com

                                       **Counsel for Petitioner**

16