IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MIDFIRST BANK, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. CIV-17-231-D |
| | ) | |
| SAFEGUARD PROPERTIES, LLC, | ) | |
| | ) | |
| Respondent. | ) | |

# ORDER

Before the Court is Petitioner MidFirst Bank's (MidFirst) Petition to Compel Arbitration and Designate an Arbitrator [Doc. No. 1]. Defendant Safeguard Properties, LLC (Safeguard)[1] has filed its response in opposition [Doc. No. 13] and MidFirst has replied [Doc. No. 16]. The matter is fully briefed and at issue.

## BACKGROUND

MidFirst provides retail banking and residential mortgage services. Safeguard is a provider of mortgage field services throughout the United States. It provides a number of services to financial institutions with interests in defaulted, foreclosed, and bank-owned real property. It also contracts with mortgagees and mortgage servicers to conduct property inspections, property preservation, and repair services.

---

[1] Safeguard states its correct name is Safeguard Properties Management, LLC. *See* Doc. No. 14.

On December 4, 2007, the parties executed a Master Service Agreement (the Agreement) under which Safeguard was to provide services on properties throughout the United States. In the Agreement, Safeguard represented it would, *inter alia*, perform the services in accordance with (1) industry standards and all applicable laws and regulations, (2) service standards set forth in the Agreement, and (3) the "Rules," which were defined as "all published HUD, VA, Fannie Mae, Freddie Mac, GNMA, private investor and private mortgage insurer regulations, guidelines and requirements and all updates thereto [as well as] all applicable federal, state and local laws, rules, regulations and ordinances, and [MidFirst's] requirements, policies and procedures, and all amendments thereto."

MidFirst's right to indemnification from Safeguard was governed by section 11 of the Agreement, which stated:

> [Safeguard] shall indemnify and hold [MidFirst], its Affiliates, respective employees, officers, directors, and agents harmless from any and all loss, payments, expenses, claims, injury, liability, damages, penalties, fines, forfeitures, denials of insurance and/or guarantee claims, lost compensation or reimbursement amounts, attorneys fees and costs, of any kind whatsoever, arising from or in any way connected with (a) any violation or failure to comply with the Rules; (b) non-compliance with the terms of this Agreement or any Exhibit, Addendum or Amendment hereto, including but not limited to breach of any warranty or representation or performance standard set forth herein; (c) any claims or actions whatsoever brought by any Subcontractor or on behalf of a Subcontractor hired by or working on behalf of Company; (d) negligent, wrongful acts or misconduct by Company, its employees, officers, directors, agents, contractors or Subcontractors, (e) any claims or actions brought by a third party alleging damage or injury to the property or person arising out of an act

> or omission of Company, its affiliates, respective employees, officers, directors, contractors, Subcontractors, and agents or (f) any mistakes by Company, its affiliates, respective employees, officers, directors, contractors, Subcontractors, and agents relating to the Contract Services herein.

The indemnification provision also contained the following arbitration clause:

> In the event any disputes arise relating to this Section, then the parties agree to submit the dispute to arbitration, in accordance with the laws of Oklahoma, unless both parties agree in writing not to go to arbitration. Such dispute will be brought in the jurisdiction of Oklahoma with a venue of the Western District of Oklahoma.

MidFirst alleges that for more than 2,600 properties, Safeguard failed to perform its services in conformity with HUD rules, which caused HUD to reconvey the properties back to MidFirst and/or refuse payment of insurance benefits. MidFirst contends that as a result, it incurred substantial monetary damages and other losses, including interest curtailments, reconveyance losses, costs assessed by HUD, and other miscellaneous expenses. MidFirst submitted claims to Safeguard for indemnification for the aforementioned losses. However, Safeguard refused to indemnify MidFirst and gave notice it was terminating the Agreement, to be effective February 13, 2017.

MidFirst alleges Safeguard has breached the Agreement, entitling it to "offset its Damages by an amount equal to Safeguard invoices yet to be paid." Pet. ¶ 20. Pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 *et seq.*, MidFirst filed the present action, invoking the arbitration clause set forth in § 11. Safeguard objects

3

to arbitration on the grounds that (1) the arbitration clause does not apply to MidFirst's set off claims and the parties did not agree to arbitrate such claims, and (2) the arbitration clause is so vague that it is unconscionable and unenforceable under Oklahoma law.

## STANDARD OF DECISION

When deciding whether an enforceable agreement to arbitrate exists, the Court views the facts and all reasonable inferences in the light most favorable to the party opposing arbitration. *Ragab v. Howard*, 841 F.3d 1134, 1139 (10th Cir. 2016). "The FAA provides that arbitration agreements 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *In re Cox Enter., Inc. Set-top Cable Television Box Antitrust Litig.*, 835 F.3d 1195, 1201 (10th Cir. 2016) (quoting 9 U.S.C. § 2)). The FAA is a "congressional declaration of a liberal federal policy favoring arbitration agreements." *Id.* at 1201 (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Its purpose is to place arbitration agreements upon the same footing as other contracts and reverse the judiciary's longstanding refusal to enforce agreements to arbitrate. *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002).

When a contract contains an arbitration clause, there is a "strong presumption" that the dispute is arbitrable. *Cox Enter.*, 835 F.3d at 1201. Thus, "an order to

4

arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Id.* (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582-83 (1960)). Although such presumption "disappears" where there is a dispute over whether a valid arbitration agreement exists, *Dumais v. American Golf Corp.*, 299 F.3d 1216, 1219 (10th Cir. 2002), "[i]n the absence of any express provision excluding a particular grievance from arbitration, ... only *the most forceful evidence* of a purpose to exclude the claim from arbitration can prevail ...." *Cox Enter.*, 835 F.3d at 1201 (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 584-85 (1960) (emphasis in original)).

Despite the general presumption in favor of arbitrability, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Tiffany v. KO Huts, Inc.*, 178 F. Supp. 3d 1140, 1149 (W.D. Okla. 2016) (quoting *AT&T Technologies, Inc. v. Commc'ns Workers*, 475 U.S. 643, 648 (1986)); *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 977 (10th Cir. 2014) ("[E]ven under the FAA it remains a 'fundamental principle' that 'arbitration is a matter of contract,' not something to be foisted on the parties at all costs.") (quoting *AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). It follows that the question whether the parties have agreed to arbitrate

5

a particular dispute is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). At the same time, in deciding whether the parties have agreed to arbitrate a particular dispute, the Court is not to rule on the potential merits of the underlying claims. *Local 5-857 Paper, Allied-Indus., Chem. and Energy Workers Int'l Union v. Conoco, Inc.*, 320 F.3d 1123, 1126 (10th Cir. 2003).

## DISCUSSION

### I

The threshold inquiry in resolving a petition to compel arbitration is whether there exists a valid, enforceable agreement to arbitrate. *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1287 (10th Cir. 1997) ("The existence of an agreement to arbitrate is a threshold matter which must be established before the FAA can be invoked.") (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)). Safeguard contends an enforceable agreement does not exist because the arbitration clause is procedurally unconscionable due to its purported lack of clarity regarding which set of rules would govern the arbitration proceeding.[2] The Court is not persuaded by this argument.

---

[2] Section 2 of the FAA allows an arbitration clause to be invalidated by contract defenses, such as fraud, duress, or unconscionability. *Nesbitt v. FCNH, Inc.*, 811 F.3d 371, 376 (10th Cir. 2016).

6

Unconscionability is determined at the time the contract is formed and is a question of law for the Court to decide. *Phillips v. Machinery Co. v. LeBlond, Inc.*, 494 F.Supp. 318, 322-23 (N.D. Okla. 1980). Under Oklahoma law,[3] "[a]n unconscionable contract is one in which, at the time of making of the contract, and in light of the general commercial background and commercial needs of a particular case, clauses are so one-sided as to oppress or unfairly surprise one of the parties. Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties, together with contractual terms which are unreasonably favorable to the other party." *Been v. O.K. Industries, Inc.*, 495 F.3d 1217, 1236 (10th Cir. 2007) (internal citations and quotation marks omitted). As the Oklahoma Court of Civil Appeals once noted, "[a]n unconscionable contract is one which no person in his senses, not under delusion would make, on the one hand, and which no fair and honest man would accept on the other." *Stoll v. Chong Lor Xiong*, 2010 OK CIV APP 110, ¶ 16, 241 P.3d 301, 305 (citation omitted). Consequently, Oklahoma's unconscionability standard has been described as "onerous." *Been*, 495 F.3d at 1236.

There is no evidence Safeguard lacked any meaningful choice or executed the Agreement under fraud, duress or compulsion; neither is there evidence that the

---

[3] The Agreement stated it would be "governed by the laws of the State of Oklahoma both as to interpretation and performance." Agreement, § 27.

terms of the Agreement were one-sided as to unjustly favor MidFirst. Moreover, the record belies Safeguard's argument that the provision lacks clarity and guidance regarding the applicable rules/procedure. The arbitration clause states any arbitration proceedings shall be conducted in accordance with Oklahoma law. In this regard, the Oklahoma Uniform Arbitration Act, 12 OKLA. STAT. §§ 1851 *et seq.*, sets forth a comprehensive scheme as to arbitration proceedings, including but not limited to the appointment of an arbitrator (*id.* § 1859), initiation of arbitration proceedings (*id.* § 1860), the method of appointing an arbitrator (*id.* § 1862), the conduct of discovery (*id.* § 1868), the award (*id.* §§ 1870-73), post-proceeding motions to vacate or correct an award (*id.* §§ 1874-75), and appeal (*id.* § 1879). Although the Act may not address every conceivable issue or dispute that may arise between the parties, its provisions do not leave one rudderless. Accordingly, the Court finds that Safeguard's vagueness challenge fails.

## II

Safeguard contends that even assuming the arbitration clause is enforceable, it reflects no agreement to arbitrate MidFirst's set-off claims. The Tenth Circuit applies a three-part test when determining whether an issue falls within the scope of an arbitration clause:

> First, recognizing there is some range in the breadth of arbitration clauses, a court should classify the particular clause as either broad or narrow. Next, if reviewing a narrow clause, the court must determine whether the dispute is over an issue that is on its face within the purview

of the clause, or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause. Where the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview. Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it.

*Sanchez v. Nitro-Lift Tech., L.L.C.*, 762 F.3d 1139, 1146 (10th Cir. 2014) (quoting *Cummings v. FedEx Ground Package System, Inc.*, 404 F.3d 1258, 1261 (10th Cir. 2005) (emphasis in original)).

The arbitration clause here is broad in its scope, requiring arbitration of "any disputes" relating to MidFirst's right to indemnification. "When a contract contains a broad arbitration clause, matters that touch the underlying contract should be arbitrated. … [T]he strong presumption is in favor of issues being subject to arbitration." *Brown v. Coleman Co., Inc.*, 220 F.3d 1180, 1184 (10th Cir. 2000) (citations omitted). Hence, a party cannot avoid arbitration "because the arbitration clause uses general, inclusive language, rather than listing every possible specific claim." An arbitration agreement is not vague "because it includes the universe of the parties' potential claims against each other." *Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1221 (11th Cir. 2000).

Viewing the facts in the light most favorable to Safeguard, the Court finds the issue of whether MidFirst is entitled to a set-off is related to its right to indemnification under the Agreement, and therefore, the dispute is subject to

9

arbitration. In reviewing the arbitration clause, the Court is mindful of its obligation not to evaluate the potential merits of the underlying claims, *Local 5-857 Paper, Allied-Indus., Chem. and Energy Workers Int'l Union*, 320 F.3d at 1126, and the well-established rule that any doubts must be resolved in favor of arbitration. *Ragab*, 841 F.3d at 1137. Under the Agreement, Safeguard agreed to indemnify and hold MidFirst harmless for, *inter alia*, all loss associated with Safeguard's violation of certain administrative rules and regulations. MidFirst contends Safeguard breached the Agreement by (1) subjecting MidFirst to administrative penalties by violating said rules, and (2) failing to indemnify MidFirst for the alleged breach. As a remedy for that breach, MidFirst seeks, among other things, the right to offset its damages by an amount equal to Safeguard invoices yet to be paid. Pursuant to the foregoing standard, the Court finds this asserted right arises from Safeguard's purported breach of its duty to indemnify and is within the purview of the clause.

Faced with analogous circumstances and arguments, the Tenth Circuit has enforced arbitration agreements containing language similar to that at issue here. *See, e.g., Sanchez*, 762 F.3d at 1146-47 (enforcing arbitration clause which stated "[a]ny dispute, difference or unresolved question between" the parties must be arbitrated); *Brown*, 220 F.3d at 1184 (enforcing clause that stated "all disputes or controversies arising under or in connection with this Agreement ... will be settled exclusively by arbitration."); *P&P Industries, Inc. v. Sutter Corp.*, 179 F.3d 861, 871

10

(10th Cir. 1999) (enforcing clause that stated "'[a]ny controversy, claim, or breach arising out of or relating to this Agreement' shall be arbitrable.").

"By using this inclusive language, the parties agreed to arbitrate any and all claims against each other [regarding indemnification], with no exceptions." *Brown*, 211 F.3d at 1221. Accordingly, the Court finds that MidFirst's set-off claims fall within the scope of the parties' arbitration clause.

## CONCLUSION

MidFirst's Petition to Compel Arbitration and Designate an Arbitrator [Doc. No. 1] is **GRANTED** as set forth herein. It appearing that this case should be stayed in favor of arbitration, the Clerk is directed to administratively terminate this action in her records, without prejudice to the rights of the parties to reopen the case after completion of the arbitration proceeding for the entry of any stipulation or order, or for any other purpose required to obtain a final determination of the litigation. Within **fourteen (14) days** of this Order, the parties shall file a joint notice regarding the status of their selection of an arbitrator. Upon completion of the arbitration proceeding, the parties shall notify the Court by filing a written notice in the case record.

If within **thirty (30) days** after completion of the arbitration proceeding, the parties have not moved to reopen this case for the purpose of obtaining such final determination, this action will be deemed to be dismissed with prejudice.

**IT IS SO ORDERED** this **8th** day of April 2017.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE